UNITED STATES DISTRICT COURT
EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

TERESA ANNE HANSEN,

                Plaintiff,             Civil Action No.: 13-13348
                                        Honorable Sean F. Cox
          v.                      Magistrate Judge David R. Grand

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                Defendant.

_____/

**REPORT AND RECOMMENDATION**
**ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [14, 18]**

Plaintiff Teresa Hansen brings this action pursuant to 42 U.S.C. § 405(g), challenging a final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions [14, 18], which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.      RECOMMENDATION**

For the reasons set forth below, the Court finds that the Administrative Law Judge ("ALJ") erred in determining at Step Four that Hansen could perform her past relevant work as it was generally performed in the national economy. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment [18] be DENIED, Hansen's motion [14] be GRANTED and that, pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's decision be REMANDED for further consideration consistent with this Report and Recommendation.

**II.     REPORT**

      **A.     Procedural History**

On April 4, 2011, Hansen filed an application for DIB, alleging disability as of January 5, 2009. (Tr. 165-74). The claim was denied initially on June 2, 2011. (Tr. 84-94). Thereafter, Hansen filed a timely request for an administrative hearing, which was held on May 24, 2012, before ALJ Susan Wakshul. (Tr. 26-68). Hansen, represented by attorney Clifford Walkon, testified at the hearing, as did vocational expert ("VE") Jay Steinbrenner. (*Id.*). On June 1, 2012, the ALJ found Hansen not disabled. (Tr. 11-25). On June 27, 2013, the Appeals Council denied review. (Tr. 1-7). Hansen filed for judicial review of the final decision on August 5, 2013

### B.      Framework for Disability Determinations

Under the Act, DIB is available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" in relevant part as the

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.

Step Four:   If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five:  Even if claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Schueuneman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 U.S. Dist. LEXIS 150240 at *21 (E.D. Mich. Dec. 6, 2011) *citing* 20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).  "The burden of proof is on the claimant throughout the first four steps . . . .  If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]."  *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### C.      Background

#### 1.       Plaintiff's Testimony and Subjective Reports

At the time of the hearing, Hansen was 58 years old.  (Tr. 31).  She reported that the conditions preventing her from working are right breast cancer status post radical mastectomy, lymphedema as a result of that procedure, and neuropathy as a result of chemotherapy and radiation treatment.  (Tr. 187).  At the hearing she also testified to lower back pain that radiated into her legs, for which she underwent surgery in 2000.  (Tr. 42; 56).  She previously owned two sewing businesses, and closed them in January and April 2009, respectively, due to her conditions.  (Tr. 36).  Her job consisted of both supervising employees at the stores, as well as performing sewing herself.  (Tr. 35-36; 196).  She now works part time sewing out of her home, working approximately 10-15 hours a week.  (Tr. 38).  She testified she could not work more than that due to her conditions, including pain and numbness after sitting for extended periods of time, numbness and lymphedema in her right arm after extended periods of arm use, and memory and confusion issues from her treatments.  (Tr. 41; 46; 49-55; 197).  She reported being

able to engage in moderate housework, including cooking, laundry, loading the dishwasher and taking the dog outside to use the bathroom. (Tr. 55; 59; 198). She occasionally shops and goes to church. (Tr. 57). She enjoys painting and spending time with her family, including her grandchildren, but does not care for them alone. (Tr. 55; 58-59). Otherwise, her day consists of some sewing, taking medication, occasionally going outside and resting with her feet up. (Tr. 55; 200-201).

Hansen reported that her conditions interfere with her ability to lift, squat, stand, reach, walk, sit, kneel, climb stairs, remember, complete tasks, concentrate and use her hands. (Tr. 202). She has difficulty sleeping due to numbness and tingling. (Tr. 56). She testified she could lift a gallon of milk or between 5-10 pounds and stand for 15-20 minutes. (Tr. 202). She could also walk and sit, but needs to alternate between the two every 20-30 minutes. (*Id.*). She reported difficulty with being able to follow both spoken written instructions and indeed, at the hearing she had to ask on several occasions for the ALJ to repeat a question, and had to read from a list of her side effects due an inability to remember. (Tr. 44-46; 49; 51; 54-55; 202).

### 2. *Medical Evidence*

Because Hansen's date last insured was September 30, 2010, the Court addresses the medical evidence only insofar as it relates to her condition through that date. (Tr. 16). In December 2008, Hansen was diagnosed with breast cancer of the right breast and underwent a quadrantectomy (Tr. 293). In January 2009, it was determined that her cancer was more aggressive and she underwent a radical mastectomy of that breast. (Tr. 316-17; 374-75; 409-10; 428; 431; 466-68). Shortly after, Hansen suffered deep vein thrombosis ("DVT") due to a blood clot in her leg. (Tr. 411-15; 419-20; 456). She was placed on blood thinners after that, and those medications were modified as they were causing her blood to thin too much, and modification

4

was required before subsequent cancer treatment could be undertaken.  (Tr. 259; 263-65; 326-29; 416-18).  Follow up tests revealed no reoccurrence of DVT, and at one point Hansen requested to stop the blood thinning medication.  (Tr. 257; 458-61).  Otherwise, she recovered well after surgery, with only a little edema in her right arm that improved over time.  (Tr. 286; 292; 335; 345; 515-17; 571).

Hansen's surgery was followed by courses of chemotherapy and radiation, ending in July 2009.    (Tr. 283-96; 326-53; 371; 464-65; 471-72).    Hansen reported no unexpected complications with either treatment.  (*Id.*).  Afterwards, she was placed on several medications to prevent recurrence.  (Tr. 291).  She also underwent an excision of a right axillary subcutaneous nodule in May 2009.  (Tr. 469).  She continued to be followed by her oncologist team, with no evidence of recurrence of cancer.  (Tr. 283-96; 326-53; 396; 441-42; 444; 453-55; 576).  She did experience some shakiness that she first attributed to her medications, but tests, including an MRI and CT revealed no objective reason for the shaking and she was advised to see a neurologist.  (Tr. 346-47; 372; 399; 436-38; 443).  An October 2010 EMG found "some delays in the nerve conduction study, which may indicate mild peripheral neuropathy" and recommended a workup.  (Tr. 463).  At a subsequent appointment, the doctor opined that Hansen's complaints of peripheral neuropathy in her hands and feet could be related to her treatment, but did not prescribe any specific treatment for this condition and instead decided to continue monitoring Hansen's condition.  (Tr. 353).  It was revealed that another medication, which Hansen was taking as part of an experimental cancer study, was causing her general achiness in her joints, which resolved when she stopped taking it.  (Tr. 350-52).

As part of her treatment, in January 2009 Hansen also underwent a total body bone scan that revealed osteoarthritic and degenerative changes at the thoracic/lumbar junction, the lower

lumbar spine and in both knees and feet. (Tr. 430). Hansen reported having undergone back surgery in 2000. (Tr. 42; 56). However, during the relevant time period, including at appointments with her primary care physician Dr. James Miller, Hansen did not report any problems with back or joint pain (other than that described above in relation to a side effect of her medication) and neurological and musculoskeletal testing during this period revealed no abnormal findings. (Tr. 253-68; 283-304; 416-18). A bone scan conducted in August 2009 on Hansen's lumbar spine, left hip and left forearm revealed osteopenia. (Tr. 394). Another done in November 2010 revealed no significant changes. (Tr. 452). An October 2010 MRI of her lumbar spine revealed L2-L3 levoscoliosis, mild multilevel degenerative disc disease, resulting in foraminal narrowing at L3-L4 and L4-L5 with no spinal canal stenosis, mild enhancement of the L5-S1 disc considered degenerative in nature and evidence of left L5 "hemilaminotomy." (Tr. 447-48). A November 2010 MRI of her right hip revealed "mild marrow edema with soft tissue swelling immediately adjacent to the symphysis pubis area" that could be "related to some degree of osteitis pubis," as well as "very minimal high signal within the soft tissues of the gluteus medius tendon insertion adjacent to the greater trochanter on the right for which a mild degree of tendinopathy or strain injury cannot be excluded." (Tr. 449). However, hip x-rays in January 2011 were normal, as was a pelvis x-ray taken at the same time. (Tr. 433-35). Hansen did not begin complaining of back pain until June 2011, at an appointment with Dr. Miller, which was nine months after her date last insured. (Tr. 505).

Also in January 2009, and as the result of an unusual finding on a chest film, Hansen was referred to endocrinologist Dr. Mahmood Moosa for her thyroid. (Tr. 311-316). The records of this treatment span from February 2009 through September 2010 and are generally unremarkable noting a grossly stable thyroid that was essentially unchanged. (Tr. 300-311; 377). However,

the last of these records, in September 2010, reflects Hansen's complaints of symptoms including fatigue, sweating, weight gain, belching, nausea, joint pain and stiffness, insomnia, headaches, numbness and tingling, and forgetfulness. (Tr. 297). An exam was normal in relation to her musculoskeletal and neurological systems, as well as her mental capacity, including that she had normal memory and no depression. (Tr. 298). Dr. Moosa ordered a thyroid profile and a neck ultrasound and recommended that Hansen return in 6-12 months. (Tr. 298-99).

At certain points throughout her treatment records, Hansen reported fatigue, memory problems and depression. (Tr. 265; 297; 326; 350). At one point, Dr. Miller prescribed Paxil. (Tr. 265). Hansen's hematologist suggested a psychiatric consultation, although there is no record of Hansen ever following up on this recommendation. (Tr. 326). However, there are no treatment records reflecting objective test results that corroborate complaints of mental issues. Instead, the treatment notes reflect no depression, and normal memory and concentration. (Tr. 297-304; 515-17).

On June 7, 2011, Dr. Miller submitted a medical source statement for Hansen, reporting that she suffered from "chronic back pain/neuritis, neuropathy," accompanied by worsening pain and symptoms, weakness, fatigue, numbness, tingling, right arm swelling, poor sleep, decreased energy and confusion caused by her medications. (Tr. 480). He opined that she was unable to lift greater than 10 pounds, could not repeatedly use her upper extremities, could not bend, twist, climb, crawl, grasp or perform fine finger movements, and could not stand, sit or walk for "extended periods of time." (*Id.*). He noted her prognosis as "poor" and opined that she could not perform a full time job due to chronic pain, weakness, decreased energy and numbness in her extremities. (Tr. 481). On July 6, 2011, Dr. Miller completed a residual functional capacity

assessment form, essentially parroting his June 2011 form, but adding that Hansen could only stand, sit or walk less than one hour in an eight hour day, had to elevate her legs above her heart any time with prolonged sitting, would need to take 2-3 hours of unscheduled breaks, and would miss about 4 days a month due to her symptoms.  (Tr. 483-84).  He opined that she could rarely twist, and never stoop, crouch, squat or climb ladders or stairs and that her symptoms would frequently interfere with her attention and concentration.  (Tr. 485).  He noted that "patient states the medication she is on causes dizziness and nausea and fatigue which can be worsened by heat, fumes and severe temperatures."  (*Id.*).  Dr. Miller reconfirmed his opinion on March 28, 2012, when he re-signed both of these filled out forms.  (Tr. 579-84).

### D.    The ALJ's Findings

Following the five-step sequential analysis, the ALJ found, at Step Four, that Hansen was not disabled.  At Step One she determined that despite working part time as a seamstress out of her home, Hansen had not engaged in substantial gainful activity since her alleged onset date. (Tr. 16).  At Step Two the ALJ determined that Hansen had the following severe impairments: breast cancer and degenerative disc disease.  (*Id.*).  At Step Three the ALJ concluded that neither of Hansen's severe impairments, either alone or in combination, met or medically equaled a listed impairment, specifically comparing her impairments against Listings 1.04 (disorders of the spine) and 13.10 (breast cancer).  (Tr. 16-17).  Next, the ALJ assessed Hansen's RFC, finding her capable of light work except that she could do no overhead reaching or repetitive motions with her right upper extremity, could perform frequent handling, finger and feeling, needed to elevate her legs for up to two hours a day and needed a sit/stand option at will.  (Tr. 17).

The ALJ next proceeded to Step Four to evaluate Hansen's ability to perform her past relevant work.  At the hearing, the VE testified that Hansen's past relevant work running a

sewing business was actually two jobs – sewing supervisor, and seamstress – with two different

Dictionary of Occupational Title ("DOT") codes.  (Tr. 62).  The seamstress job was listed as

light and skilled with a SVP level of 7.  (*Id.*).  The sewing supervisor position was also light and

skilled with an SVP of 6.  (*Id.*).  In response to the ALJ's question as to whether Hansen could

perform her past relevant work given her RFC, the VE testified that she could perform the

occupation of sewing supervisor with the given RFC, but not the occupation of seamstress.  (Tr.

63-65).  Based on this testimony, the ALJ determined at Step Four that Hansen could perform

her past relevant work as a sewing supervisor "as it was actually and generally performed," and

thus she was not disabled under the Act.  (Tr. 20-21).

### E.  Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative

decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the

Court "must affirm the Commissioner's conclusions absent a determination that the

Commissioner has failed to apply the correct legal standard or has made findings of fact

unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d

591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d

647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not

remand for further administrative proceedings unless the claimant has been prejudiced on the

merits or deprived of substantial rights because of the agency's procedural lapses.") (internal

quotations omitted).  Substantial evidence is "more than a scintilla of evidence but less than a

preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)

(internal quotations omitted).  In deciding whether substantial evidence supports the ALJ's

9

decision, the Court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings for substantial evidence, the Court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

**F.     Analysis**

Hansen makes four arguments as to why the ALJ's decision is not supported by substantial evidence. While the Court ultimately finds merit in one of them, requiring remand, it finds consideration and rejection of two of the other three is necessary to alleviate any redundant consideration upon remand.

10

       *1.     Hansen's Credibility*

Hansen argues that the ALJ erred in finding her not credible. The Sixth Circuit has held

that an ALJ is in the best position to observe a witness's demeanor and to make an appropriate

evaluation as to her credibility. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir.

1997). Thus an ALJ's credibility determination will not be disturbed "absent compelling

reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). When a complaint of pain is in

issue, after the ALJ finds a medical condition that could reasonably be expected to produce the

claimant's alleged symptoms, she must consider "the entire case record, including the objective

medical evidence, the individual's own statements about symptoms, statements and other

information provided by treating or examining physicians . . . and any other relevant evidence in

the case record." to determine if the claimant's claims regarding the level of her pain are

credible. *Soc. Sec. Rul.* 96-7, 1996 SSR LEXIS 4 at *3, 1996 WL 374186 (July 2, 1996); *see

also* 20 C.F.R. § 404.1529.

Hansen argues that the ALJ failed to engage in the required analysis, instead relying on

boilerplate language with no explanation as to how her testimony and subjective statements

lacked credibility. The Court disagrees. The ALJ specifically described Hansen's subjective

reports and testimony about her conditions. (Tr. 17-18). She then went on to describe Hansen's

longitudinal medical history, noting that despite her allegations of fatigue and neuropathy, the

medical records throughout the relevant period "reveal the claimant to be doing well," that her

symptoms were "generally controlled with medication," and that despite her allegations of

persistent back pain, the records of treatment through her date last insured revealed no evidence

of treatment related to her back. (Tr. 18). The ALJ further noted that Hansen's credibility was

undermined by her own inconsistent statements, in that her subjective reports of symptoms did

not correspond to what she admitted she could do during the day, including performing household chores, some sewing from her home, and driving locally.  (Tr. 19-20).  The ALJ further found that Hansen's allegation that she should be limited to unskilled tasks was belied by her own admission that she ran a sewing business from her home.  (*Id.*).  The Court finds that the ALJ adequately explained her reasons for finding Hansen not credible, and those reasons are supported by substantial evidence of record.

### 2.     Failure to Limit Hansen to Unskilled Work

Hansen also argues that the ALJ erred in not limiting her to unskilled work despite her reports of brain fog, confusion, depression, fatigue and memory and concentration problems.  However, the ALJ specifically explained her reasons for rejecting this proposal – she found no objective evidence that supported Hansen's subjective reports of these conditions.  (Tr. 19-20).  Furthermore, the ALJ noted that Hansen's activities of daily living, including running a part-time sewing business from her home – a skilled task – were inconsistent with a finding that she was unable to do anything more than unskilled work.  (*Id.*).  As noted above, these reasons are supported by substantial evidence of record and thus the ALJ did not err in this finding.

### 3.     Finding that Hansen Could Perform Only Part of Composite Job

Lastly, Hanson argues that the ALJ erred at Step Four when she found that Hansen could perform "her past relevant work as a sewing supervisor" as it was actually and generally performed.  (Tr. 20).  Hansen argues that because the VE testified that her job was actually a composite job, that is, a combination of the jobs of sewing supervisor and seamstress, the ALJ's decision at Step Four requires reversal.  The Court agrees.

As a general rule, a claimant is not disabled if she maintains the RFC to perform her past relevant work either as actually performed or as it could generally be performed in the national

economy.  SSR 82-61, 1982 SSR LEXIS 31, *3 (1982); 20 C.R.F. § 404.1560(b)(2).  Where a

claimant is found to have performed a composite job, a job which has "significant elements of

two or more occupations" and for which there is no equivalent in the DOT, her ability to perform

her past relevant work must be "evaluated according to the particular facts of each individual

case."   SSR 82-61, 1982 SSR LEXIS 31 at *2.   A person whose past relevant work is a

composite job is deemed capable of performing that work if she is found capable of performing

the skills of each of the individual components of that work.  *Henson v. Colvin*, No. 12-3053,

2014 U.S. Dist. LEXIS 33496, *10-11 (E.D. La. Feb. 18, 2014) *adopted by* 2014 U.S. Dist.

LEXIS 33494 (E.D. La. Mar. 11, 2014) (collecting cases).  An ALJ "may not deem a claimant

capable of performing past relevant work by dividing the demand of a composite job into

separate jobs and finding him capable of performing the less demanding of the two jobs."  *Id.*

*citing Gallant v. Astrue*, No. 09-357, 2010 U.S. Dist. LEXIS 81562 (D. Me. July 20, 2010)

*adopted by* 2010 U.S. Dist. LEXIS 81567 (D. Me. Aug. 10, 2010).[1]

Here, the VE specifically testified that Hansen's past relevant work was a combination of

sewing supervisor and seamstress, supporting a finding that the position was a composite job.

(Tr. 62).  The VE further testified that, given the ALJ's RFC assessment, Hansen could perform

the job of sewing supervisor, but could not perform the job of seamstress.  (Tr. 63-66).  Thus,

based on this testimony, the ALJ erred in finding at Step Four that Hansen could perform her

past relevant work.  *See Henson*, 2014 U.S. Dist. LEXIS 33496 at *13-14 (ALJ's finding at Step

---

[1]

 As set forth in the Program Operations Manual System ("POMS"), a handbook for internal use at
the Social Security Administration, "if [the ALJ] can accurately describe the main duties of [past
relevant work] only by considering multiple DOT occupations, the claimant may have performed
a composite job.  POMS DI 25005.020(B).  POMS further provides that because a composite job
does not have a DOT counterpart, the ALJ should "not evaluate it at the part of step 4 considering
work 'as generally performed in the national economy.'"  *Id.*  Although POMS has no legal force
and is not controlling, it is "nevertheless persuasive."  See *Davis v. Sec'y of Health and Human
Servs.*, 867 F.2d 336, 340 (6th Cir. 1989).

Four that claimant could perform one part of composite job reversible error); *Garcia v. Colvin*, No. 12-4191, 2013 U.S. Dist. LEXIS 92228 (N.D. Ill. June 28, 2013) (same); *Lee v. Astrue*, No. 11-1995, 2012 U.S. Dist. LEXIS 119800 (W.D. Wash. July 26, 2012) (same).[2]  Since the ALJ did not make an alternate Step Five finding, her ultimate conclusion that Hansen was not disabled is not salvageable and should be reversed and remanded for further consideration consistent with this Report and Recommendation.  *See Lee*, 2012 U.S. Dist. LEXIS 119800 at *20 (ALJ's failure to make an alternate Step Five finding, erroneous Step Four finding requires reversal).[3]

## III.    CONCLUSION

[2] The Commissioner's arguments to the contrary are unavailing.  None of the cases the Commissioner cites support her position that an ALJ can find that a person who has a composite job can return to past relevant work where she can "perform the central aspect of that job." (Comm. Brf. at 8).  In *Black v. Apfel*, 143 F.3d 383, 387 (8th Cir. 1998), contrary to the Commissioner's interpretation of the case, that a claimant's past relevant work as a "receptionist/inventory clerk" allowed her to perform functions of only a receptionist, the Court actually found that the claimant had past relevant work of being *solely a receptionist* (in addition to her other past relevant work as a receptionist/inventory clerk), and thus her ability to perform tasks associated with that particular job rendered the ALJ's Step Four analysis proper.  *Id.* at 385, 387 (noting that claimant's "past relevant work includes experience as a *receptionist*, word processing secretary, statistical word processor, *and receptionist/inventory clerk*) (emphasis added). The other three cases the Commissioner cites, *Klawinski v. Comm'r of Soc. Sec.*, 391 Fed. Appx. 772 (11th Cir. 2010), *Wagner v. Astrue*, 499 F.3d 842, 853 (8th Cir. 2007), and *Lowe v. Apfel*, 226 F.3d 969 (8th Cir. 2000), are similarly off point.  In none of those cases did a VE testify that the claimant's job was a composite one.  Instead, the claimants argued at the appellate level that the DOT code assigned to their work (by either the ALJ or the VE) did not comprise all (or any) of the elements of their actual jobs.  This is not the case here, where the ALJ sought out and relied on VE testimony to describe and categorize Hansen's past relevant work, and the VE specifically testified that that work could only be categorized under two separate DOT codes.

[3] Hansen also argues that the ALJ's finding that she could perform her past relevant work as a sewing supervisor "as actually performed" fails to take into account the fact that she performed that job upwards of 50-60 hours a week, rather than the standard 40, and that the ALJ's RFC assessment does not support a finding that she is capable of working more than 40 hours a week. The Court finds this argument moot in light of its finding that the ALJ erred at Step Four in concluding that she could perform her past relevant work when she was unable to perform at least one critical function of that work.

14

For the foregoing reasons, the Court **RECOMMENDS** that Hanson's Motion for Summary Judgment **[14]** be **GRANTED**, the Commissioner's Motion **[18]** be **DENIED** and this case be **REMANDED** for further consideration consistent with this Report and Recommendation.

Dated: September 15, 2014                               s/David R. Grand
Ann Arbor, Michigan                                        DAVID R. GRAND
                                                                     United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 15, 2014.

                                                                     s/Eddrey O. Butts
                                                                     EDDREY O. BUTTS
                                                                     Case Manager

15